United States v. Camara. Mr. McNichols, pardon me? Yes, absolutely. Good morning. I'm John McNichols on behalf of Lamine Camara. There are several points of error in our brief. Unless the court had a preference to start somewhere else, I was going to start. It's your argument. You start where you want. Thank you, Your Honor. I'll start then with our point on the constructive amendment of the indictment in the case. The point that we've raised, or hope we've raised with this court, is the idea that the offense of conviction in this case is not the one that was alleged in the indictment against Mr. Camara. As alleged in the indictment, the scheme that he was involved in was a complex scheme of obtaining cars, luxury cars, through means of identity theft. Mr. Akabane, his alleged co-conspirator, would submit fraudulent financing applications to dealerships up and down the East Coast to get various luxury cars. The financing applications were fraudulent because he didn't put his name on them, but rather the names of wealthy doctors at George Washington University Hospital who had good credit ratings. This was the scheme that was alleged in the indictment. Consistent with that, in the manner and means of the conspiracy, Mr. Akabane's name is mentioned eight times over six paragraphs. In the overt acts of the conspiracy, as alleged in the indictment, Mr. Akabane's name is mentioned 14 times, for a total of 22 times in the indictment against my client, Mr. Camara. By comparison, Mr. Camara's name is mentioned only 27 times in the same indictment, including the caption and notice of forfeiture. So I can't remember when we've actually granted a constructive amendment claim. Very, very rare. And one of the questions we ask is, you know, were you somehow not on notice as to what you were to defend against? Didn't you know that basically what you needed to defend against was a conspiracy with Mr. Akabane to deal in stolen cars? I mean, there wasn't any doubt as to how they were coming at you and how you needed to mount a defense. You were on notice, were you not? We were clearly on notice and able to mount a defense if Mr. Akabane was the co-conspirator. No question about that, Your Honor. But we claim considerable prejudice if, as the court later instructed the jury, the conspiracy at issue here didn't have to be with Mr. Akabane. Remember, when this issue first came up in the context of the jury's note, we argued that given the centrality of Mr. Akabane to the indictment and to the government's case, he was the only co-conspirator that the government called, that this conspiracy necessarily had to be with Mr. Akabane. You know, I did not get that from the colloquy, and I understand that it was very, you know, the juror question comes out, everybody's confused. But I thought that when you guys were talking about it then, it seemed like the emphasis was very much not on who had to be in the conspiracy, but whether you needed to charge specific offenses. And the emphasis was on do they have to conspire specifically and not generally, and that that's more what you were talking about when you were talking to the judge. Well, certainly we'll defer to the courts reading the joint appendix. But as we understood it at the time, the complaint about, or excuse me, the question about whether the conspiracy was with Ray Akabane specifically was motivated by the jury's doubts about whether that conspiracy existed in light of the fact that Mr. Akabane made numerous concessions during the course of his cross-examination about the things that my client didn't know. You actually, someone said to the judge, the question doesn't go to who, it goes to about what. And then you argued for an instruction that says you have to conspire on a specific matter. But my understanding is that was the defense's position in that colloquy. This isn't about who, it's about what. To that point, Your Honor, the jury's ultimate confusion on it, as I argued, I think the jury's motivation there was the fact that there was doubt about Mr. Akabane and Mr. Cameron in a conspiracy and whether the conspiracy could involve other people. And just on that point, after the judge made the answer to the question and said the conspiracy could be with Mr. Akabane or other known or unknown co-conspirators, one juror actually piped up at that time and said, did you say and or or? Which suggests to me, again, regardless of what I argued at the time, that the focus of the jury's question was the nature, identity, excuse me, of the co-conspirators. Can I just ask a question? What is your theory of the distinct conspiracy that doesn't involve Akabane for which this jury, in light of the evidence at trial and the party's arguments, might reasonably have thought it could convict your client? Did you argue ever that there are multiple conspiracies here or ask for a multiple conspiracy objection or anything like that? We did not ask for multiple conspiracy instruction. That's what I meant, instruction. Thank you. At the time, we simply said that you could not drop Mr. Akabane out of the jury's charge. As to Your Honor's point, though, one of the specific alternative conspirators urged by the government in response to that question was a woman by the name of Zambia Jackson, who was the person in North Carolina who provided the temporary tax. How is that a separate conspiracy? It still looks like it's all different prongs of the same conspiracy. It's not the same cars in the first place. Two of the cars were the same. One of the cars was not. And the harm from that conspiracy would have been whatever harm occurs to the state of North Carolina when a temporary dealer tag is taken and used for a fraudulent purpose. That conspiracy, assuming it existed between Ms. Jackson and my client, Mr. Camera, did not cause the loss of the vehicles from the dealerships. That sounds a little bit to me like a lot of angels dancing on the head of a pin. And wasn't the critical point less exactly whom you conspired with and less who the co-conspirators were than the fact that there was a conspiracy? Well. That there was a conspiracy to deal in stolen cars and that Mr. Camera was a part of a conspiracy to deal in stolen cars. And you can try to obfuscate it by talking about, you know, oh, we had an indictment in the conjunctive and an instruction in the disjunctive, which as I understand it is a fairly standard practice and is not frowned upon. But the basic questions I ask myself in these constructive amendment questions were, were you put on notice? You knew what you were defending against. You absolutely knew. And you put on a vigorous defense. And that's just fine. That's what you're supposed to do. And also, you know, the identity of the conspirators is often a matter of dispute. But that's not really the point of the instruction. The point of the instruction is whether you, is less who you, exact identity of who you conspired with than the fact that there was a conspiracy to deal in stolen cars and you were part of it. And that's what the elements of the crime speak to. They don't speak as much to the exact identity of who, when, what were the co-conspirators as they do to the fact of the conspiracy. That's where the elements of the crime go. That's right, Your Honor. But in terms of notice, a conspiracy does not have complete fungibility of the participants before it becomes a different conspiracy than the one that's alleged in the indictment. And in this case here, when you remove Mr. Ecobana, and just by the way, in the indictment, there were no other conspirators, not merely named, but identified by position or role in the conspiracy other than the persons who provided Mr. Ecobana with the Social Security numbers and personal identifying information that he used to obtain the cars. So as alleged, he's the hub of the conspiracy. There are no other participants interacting with my client. Well, it gets back to the point that was raised earlier. You didn't request a multiple conspiracy instruction. That's correct. We did not because we understood from the indictment and from the discovery that we received that this was the conspiracy they were going to prove. That's what we understood. And had we known that there were... Well, but the identity is purposely left, both in the indictment and in the instruction, a little bit loose and a little bit vague. And it doesn't, again, other than Mr. Ecobana's name, it just lists and others, which is... And that phrase, and others, which was used both in the indictment and in the instruction, it seems to me gets to the point that the identity of particular co-conspirators, you know, may be greater or lesser. Some may have played a greater part. Others may not. But the fact of the conspiracy and your involvement with it is what the jury was asked to determine. That's correct, Your Honor. The fact of the conspiracy. But, again, to Your Honor's point about prejudice and putting us on notice through the indictment, had we known that this conspiracy was going to be about someone other than Ray Ecobana, we would have called some of these other co-conspirators as witnesses. The government's only person they put up was Mr. Ecobana. No, no. See, your defense was the same, and the thing is you put on notices, and your defense spoke to that. I didn't know what was going on. I was duped. Mr. Ecobana pulled a rug from under my eyes, and that's what all the argument of willful blindness was about. But you knew, and however that indictment would have been worded, you would have put on this defense, which is that you were clueless. You didn't know what was going on, that other people duped you. That was your defense, and it would have been your defense whether the word and or or or whatever conjunction was used. It would have been that defense. So I don't see how the prejudice adheres. Your Honor, clearly that was our defense as to a conspiracy with Mr. Ecobana. If the conspiracy in the indictment had included Zambia Jackson, for example, we wouldn't have been able to make that same argument, or at least we didn't have the opportunity. Did it include her with others known and unknown to the grand jurors? No, Your Honor. Clearly that phrase is often used in indictments. That phrase is often used in indictments, clearly. But when there's no mention of the role of these other participants, at that point we're not fairly on notice just by the fact that they haven't named them. In any conspiracy charge where that language, others known and unknown to the grand jurors, appears, aren't all parties on notice that this is what the grand jury has charged, but the burden is on the government to prove that two or more persons entered into an agreement and the defendant joined that agreement. Now, to Judge Wilkinson's point, hypothetically, if Ecobana had been acquitted, ultimately that still would not have precluded Kamra from being convicted. Similarly, at trial, if the evidence should show others known and unknown to the grand jurors actually participated and furthered the conspiracy, isn't that enough to convict? I don't think not on the conspiracy that was alleged here, Your Honor. Unless the court had further questions on that, I was going to move to one point in sentencing in the remainder of my time that I have. Thank you. One of the elements that we challenged with regard to the sentence was the loss calculation that the district court put in or agreed with in the pre-sentence report, which was a total of $276,000, which was based on the value, reported value of five cars that were involved in this conspiracy. Two of the cars were the ones that Mr. Kamra bought from Mr. Ecobana, and we're not challenging that as part of the calculation. But for the other three cars, we are, given that Mr. Ecobana didn't have a role in obtaining them from the dealerships. Now, on that point, just in the time I have remaining, I would direct court's attention and ask the court to focus in particular on one car, which is the BMW. Well, this is all factual, isn't it, and you've got to prove that there was a clearly erroneous determination? It is subject to a clearly erroneous determination, Your Honor, but the district court did not make any factual findings on the record on this. And even subject to that standard, Your Honor, we submit that this was a clearly erroneous finding. If the court directs its attention, at some time, to page 651 of the joint appendix, which is exhibit 20 of the trial evidence, that is the document by which that BMW, that was later included in the loss calculation, was obtained. On that document, it shows that it was obtained in July 2014. This conspiracy, as alleged by... Which one of the three cars are you objecting to? This is the BMW, Your Honor. That car was obtained in July 2014. On the government's reading of this conspiracy, the conspiracy between my client and Mr. Echebena began in December 2014. I thought I recollected that your client obtained fraudulent tags for the buyers of the BMW. The client did obtain, that's right. So why wouldn't that be counted in the loss calculation? Because the car was already stolen by the time he did that, Your Honor. Well, then it's still within the scope of the conspiracy. I mean, he's obtaining... You don't want something calculated in the loss calculation where he's obtained for the buyer the fraudulent tags. My time's up. May I answer the question? On rebuttal. Very well. Thank you. Good morning, Your Honors. May it please the Court, Kellen Dwyer and Nathaniel Smith of the United States. I think I want to push back on Mr. McNichol's suggestion that he did not have notice that there were other conspirators who were going to be a part of this case. Zambia Jackson, the woman in North Carolina who his client was texting to get the fraudulent tags, and Mr. Negawi, one of the defendant's friends who he set up a deal to get a stolen Jeep from, these were both people who were in the trial exhibits. Months before trial, we had given these text messages to the defense counsel. And weeks before trial, we provided them with 12 pages of excerpts of the text we intended to use. This eventually became Government Exhibit 44, which is in the JA at 677-89. And it shows text messages between the defendant and Ms. Jackson about getting fraudulent tags for three stolen cars. And these are the exact same three stolen cars that Mr. Ikebina was the source of. So he's part of the conspiracy, so is she, so is the defendant. There's also text with Mr. Negawi about a stolen Jeep. And defense counsel actually said a minute ago that had he known about these other conspirators, he would have called some of them as witnesses. He did. He called Mr. Negawi, one of the conspirators, as a defense witness. How did he know Mr. Negawi existed? Because he was given a 302 of an FBI interview of him months before trial. He was also given a 302 of Ms. Jackson's interview months before trial, and he could have subpoenaed her. There was also a motion in Lemonnet before trial when defense counsel was in the district court record, docket 32, filed a motion to exclude evidence that happened after Mr. Ikebina was arrested. The government responded and made, and its response is docket 33, and we made three points. We explicitly stated the conspiracy involved people besides Mr. Ikebina. We stated that, called Ms. Jackson a co-conspirator. And we explicitly stated that the conspiracy survived Mr. Ikebina's arrest. And that's page ID 298 and 299. Is there any point that you think that the panel has overlooked in our discussion with opposing counsel? No, Your Honor. To the contrary, I think that Your Honor hit the point on the head that the defense counsel has to show prejudice, and I think this is actually a technical point, but there's a shift in their opening brief. They're calling it a constructive amendment claim. But then after we made the point that the conspiracy is broad enough to encompass other co-conspirators, the reply brief really shifted to a variance claim. And the important difference is that variance claims require a showing of prejudice. And in this context, prejudice means that you're actually surprised by the evidence, that argument, and that you are inhibited in your ability to make a defense. And there's a number of cases, including United States v. Kennedy, that was written by Judge Wilkinson. I think we understand. I think it's more profitable if I ask the other members of the panel what questions, if any, they have of you. Of course, Your Honor. I just have one quick question. Sure. Listen, I just want to tell you my one concern about the case. So I would be inclined to agree, having looked at it, that no jury could kind of sit through this trial, the government's arguments, and think that there was some hypothetical distinct conspiracy on the table for which they could convict Mr. Camera that didn't involve Mr. Echevina. But the jury's question troubles me. It does sort of sound like, and when the juror comes back and says, was that and or or, like maybe they thought differently. Maybe they really did think there were two conspiracies here, and one had Mr. Echevina in it and one didn't. What am I supposed to make of the jury's question? Well, to your first point, Your Honor, I think certainly a lot of people in our office will try to speculate when we get jury notes about what the jury's thinking, and that's something that's kind of fun to do. But the experienced trial lawyers always say you really can't draw anything for what they're thinking. It's quite clear that they're confused where they say, do we have to show a conspiracy with race, Echevina specifically, or conspiring in general? Obviously, conspiring in general is not a legal concept. So I think one way to read it, and I think the best way to read it, when they're saying, do we have to show a conspiracy with Echevina specifically or conspiring in general? What they're asking is, do we have to show a specific agreement with Echevina or just generally? I mean, it's quite possible they're using Echevina as kind of a stand-in for a specific co-conspirator since he's the one who testified and certainly the leader of the conspiracy and the one about whom there was the most argument and evidence. But in any event, I would just submit to Your Honor that even if the jury found that he made a specific agreement with someone else in the conspiracy, as long as it was the same conspiracy, which we agree that it was, Mr. Echevina's overt acts could still be used for venue and it would still be within the scope of the indictment. If there's no other questions, I would yield the remainder of my time. Judge Harris, do you have any further questions? We have no further questions. Thank you. Mr. McNichols. Thank you, Your Honor. Just briefly to flesh out the point that Your Honor and I were on right before my time ended there, I would conclude on that point by noting for the panel that had the title and tagging activity never occurred at all, the dealership would still have been out that BMW, and that's $34,000 that would come off the total loss calculation, taking my client down from offense level 20 to 18, which in turn would reduce his sentencing range from 27 months to 33 months. He's been sentenced for 36 months. So that's three months over the upper limit of the range that would apply if we eliminate this car that would have been lost whether or not this car existed. That's why we submit that this is a clearly erroneous finding, and moreover, it's one that's prejudicial to my client, because it altered his sentencing range, and he's now been sentenced for a period of time that exceeds the amount or the range presumptive in the guidelines. To Your Honor's points to Mr. Dwyer, it is true that the government produced to us 302s during the course of discovery to alert for us who some of these other players were. We submit for the court that there's a profound difference between a person who is a victim of a conspiracy and a person who's a participant in it. Now, Mr. Ecobaina's stock in trade in this scheme was in selling these cars that he stole. He sold two to my client, and he sold others to the persons to whom he gave, the BMW, the Mercedes, and also the Jeep. Now, clearly some of the same badges of fraud that the government pointed to in the trial are present on those transactions, but on the face of this indictment as it's presented here, the idea that these people were conspirators as opposed to victims of the scheme is not what stands out to us. Doesn't the indictment also charge conceal? That word is in there as one of the predicate offenses. If the conspiracy is broad enough to encompass activity that relates to stealing the cars and then concealing the theft of those cars, when you get into monkeying around with titles, aren't you concealing? That is one of the purposes of titles is concealment. It's one potential purpose, Your Honor, certainly. But the fact remains that that aspect of the conspiracy, that is concealment through the use of fraudulent title, temporary dealer tags obtained from North Carolina through a separate co-conspirator was not present in this indictment. No mention of any such activity. The indictment says in paragraph two, my client submitted false tags, but there's no mention of any other actor in there with whom he conspired for that purpose. So clearly that is one of the underlying premises of the conspiracy alleged here, but nevertheless, the factual foundation for that on the theory that Zambia Jackson was somehow wrapped up in this conspiracy is not pleaded in this indictment. Unless there are further questions, I'll take my seat.
judges: J. Harvie Wilkinson III, Pamela A. Harris, William L. Osteen Jr.